Baldwin, J.
The case presented for our consideration, is one in which the testator disposed of his whole estate, real and personal, by a will executed with all due legal solemnities, but the probat of which is resisted by his sole heir and distributee, on the ground that it was subsequently revoked by an instrument in the form of a last will and testament, and intended to operate as such, by which the testator devised and bequeathed his whole estate, real and personal, with an express revocation of all former wills. The last mentioned paper is *540 ineffectual as a will, not having been executed with the solemnities required by law,- and has not been propounded as such, but is relied upon in opposition to the former will as a valid written revocation.
I deem it unnecessary to enquire whether, since our statute of 1835, intended to place the making of wills of personalty upon the same footing as wills of realty, a revocation of them can be effected by any declaration in writing, which would not be effectual for that purpose in relation to a will of lands. The obvious convenience and policy of extending the provisions of the statute to revocations, render it highly probable that the omission to do so is attributable to inadvertence. Whether the omission can be supplied by a construction of the statute according to its spirit, is rendered a matter of difficulty by the interpretation given to the english statutes of 32 and 34 Hen. 8. 29 Car. 2. ch. 3. and 12 Car. 2. eh. 12. See 1 Rob. on Wills 193. 1 Wms. on Ex’ors 7-9. 90. Waiving, in this case, that broad enquiry, it will be sufficient for my purpose to consider whether a clause of revocation can be valid, which is found, as in the present case, in an invalid will.
Upon the concession, that the provisions of the statute of 1835 are applicable only to the making and not to^Jhe revocation of wills, we must look to, and be go‘jferned by, the preexisting law in relation to written revocations of wills of personals. This we find in the revised act of 1819, 1 Rev. Code, ch. 104. <§> 9. p. 377. The law is in these words: “No will in writing, or any devise therein, of chattels, shall be revoked by a subsequent will, codicil, or declaration, unless the same be in writing.”
There are two modes of written revocation contemplated by the law just quoted, one by a will or codicil in writing, the other by a declaration in writing. For the salce of distinction, the first may be called a testamentary revocation, and the last a declaratory revoca *541 tion. It is true, the declaratory revocation may assume the shape of a last will and testament; but that is mere matter of form, if the paper be not also testamentary in its nature. The distinction between the two modes of revocation is not formal, but essential. In the testamentary revocation, the testator contemplates a new disposition of his property, and the revocation may be implied from inconsistency in the provisions of the two instruments, in which case it is a matter of comparison and construction; or it may be express, in order that the testator may do his new testamentary work without being in any wise fettered by the contents of his former will. The declaratory revocation, on the other hand, is always express, is not a matter of comparison and construction, and is in contemplation by the testator of that disposition of his property made by the law governing in cases of intestacy.
In every testamentary revocation, the testator always acts upon the supposition that his whole purpose will be accomplished, that his entire testamentary act will be effectual, as well in regard to the new disposition of the subject, as the revocation of that which he had made by the former instrument; and. his revocation is in fact part and parcel of his new testamentary action. This is manifestly true in relation to implied testamentary revocations ; and, if not so obviously, it is to my mind equally true, in relation to those which are express. That the testator should ever proceed upon the hypothesis of the invalidity of the instrument which he employs to effectuate his object, is beyond my conception; nor can I conceive, when he makes a new disposition of his property, and eodem flatu a revocation of a former disposition of it, how he can do so with any other expectation than that both will share the same fate. It seems to me necessarily to follow, that the invalidity of the instrument, which defeats the new disposition of his property, must also defeat the revocation of the former instrument.
*542 It has been argued, however, with great ingenuity and force by the appellant’s counsel, that the statute does not require that an express revocation must necessarily be by last will and testament; that any written declaration is sufficient for the purpose; that here we have such a declaration, and though we find it in a paper intended to operate as a last will and testament, which is nugatory as such, not having been written altogether by the testator, nor attested by two witnesses, yet that still it is a declaration in writing, which is all that the statute requires, and as such is unquestionable on the score of validity. All this I admit, upon the supposition of its having been shewn that the revocation contemplated by the testator was not a subsidiary conditional exercise of power, but an independent substantive act, without reference to the character of the instrument employed, and unaffected by the new disposition thereby made of his estate. But this, in my opinion, has not been shewn; and it seems to me, in the nature of things, cannot be shewn. How can we know, that the testator contemplated the revocation as effectual, though the testament itself should be unaccomplished? How could such an expectation exist, without a probability, in his mind, that his testament would prove abortive ? and who ever made his last will and testament under the influence of such a belief?
In a case like this, no argument to prove the revocation substantive and independent, can, to my apprehension, avail any thing, unless it goes the length of proving that the testator intended to die intestate, which is impossible here, it being directly in the teeth of the testamentary provisions of the instrument. Any argument short of this, can only tend to raise a probability that the testator would have preferred, if the question had been presented to his mind, a total intestacy to the establishment of his former will. Nor would the argument be legitimate, as I conceive, even to that extent; *543 for it must be founded, in the main, upon the testamentary provisions of the last will. Now, though a regard to those provisions is perfectly proper, when we treat them and the revocation as one entire testamentary act, to stand or fall together, how can it be proper when we look to the revocation as separate and distinct, and of substantive and independent force and efficacy ? If the whole instrument is to be considered a nullity for want of the solemnities required by law, we need look no further. .But how can an argument in support of the validity of a part of it only, be derived from the testator’s supposed intention as disclosed by other parts wholly invalid? Surely, no change of intention on the part of the testator can be inferred from the testamentary provisions of a will, which is void because not executed in the manner prescribed by law. 1 Rob. on Wills, 211. 212.
In my view of the subject, this being a question of express revocation, it would be wholly immaterial, whether the provisions of the will of 1839 were consistent or inconsistent with the provisions of the will of 1838. If the former, then the testator could have had no design to abrogate the first will until the last was made effectual : if the latter, then his only purpose must have been to make a change of or amongst the objects of his testamentary bounty. In neither case could it have been his intention to die intestate, which would be the direct result of tearing the revocatory parenthesis from the inanimate paper of 1839, and giving it distinct vitality. Besides, no man, 1 should think, ever made provision by last will and testament for dying intestate. If such had been the testator’s design, be would have torn up the will of 1838 or thrown it into the fire, or if out of his possession and control, would have simply executed a naked instrument of revocation.
Thus, though I grant and invoke the testator’s intent upon this as on any other testamentary question, yet *544 that intent, it must he admitted, is to be sought for only in legitimate sources, and is to be found, not in our speculations upon his probable wishes in regard to the tránsmission of his property, but in that deliberate and solemn authentication of them which the law, in its maimed wisdom, has prescribed. Those wishes are often defeated by negligence or accident, and even by those guards which the law has thrown around the testator for his safety and the protection of the testamentary power itself; but, upon the whole, are best subserved and fulfilled by the uniformity and certainty which the required solemnities afford. I cannot, therefore, give any weight to the arguments employed to shew, that the testator’s heir at law was ultimately the chief, though originally the secondary, object of his bounty; whether those arguments be founded upon the devises in the imperfect will of 1839, or the parol evidence (if admissible at all) of the testator’s verbal declarations. One thing is certain, that to abrogate the perfected will of 1838, would transcend (to what extent cannot affect the principle) the testator’s unauthenticated desires in behalf of his heir at law, inasmuch as the effect would be to make him the sole, instead of the principal, beneficiary, to the exclusion of other objects of his regard, whether we look to the provisions indicated by the will of 1838, or by that of 1839.
■ I do not perceive, that the appellant’s cause can acquire any aid from the supposed analogies derived from the doctrines of virtual revocations, founded on changes in the condition of the devisor or the subject devised, and the revocatory efficacy, in regal’d to the latter, of imperfect acts and instruments. Those are common law doctrines, existing as well before as since the various statutes of wills, and resting on maxims which have no application, so far as I can discern, to express revocations. Pow. on Dev. 420. If my memory serves me, they wer’e mainly relied on for the purpose of illus *545 trating the proposition, that revocation, and whether ab- . ..... ... . solute or conditional, is a question oi intention; a proposition Which ÍS llOt denied.
The foregoing view of the subject upon principle, seems to me to be adequately sustained by authority. In order to see the full force and application of the adjudged cases, it must be borne in mind, that we can gain no light from the english adjudications upon their statute in relation to the revocation of wills of personals, (29 Oar. 2. c. 3. § 22.) the ecclesiastical law, which governed the making of such wills there, requiring no higher solemnities : that no similar question could arise here, in regard to revocations of devises of lands since our statute of wills, which placed such revocations and devises upon the same footing; and that we must, therefore, look to the english decisions upon the variant provisions in their statute of frauds in regard to devises and revocations of real estate. By the 5th section of that statute, devises of lands were required to be attested and subscribed in the presence of the devisor by three or four credible witnesses: by the 6th section, written revocations were required to be by will or codicil in writing, or other writing of the devisor, signed in the presence of three or four witnesses, declaring the same. Thus, the 5tb section does not require the testator to sign in the presence of the subscribing witnesses, and his acknowledgment to them has been held sufficient; whereas the 6th section requires that the testator should sign in the presence of the witnesses. The difference in the language of the two sections has been attributed to inaccuracy in the composition of the statute. Rob. on Wills 193-4. Still, however, it has been made the foundation of distinctions between the authentication of devises and revocations. It has been held, that where a revocation is by will or codicil, it is sufficient that the paper be attested and subscribed as such according to the requisitions of the 5th section, and that it need not be signed *546 by the testator in the presence of the witnesses; that requisition of the 6th section being construed to be applicable, not to a will or codicil, but to other instruments of revocation. Rob. on Wills 194-5. and the cases there cited. Another question adjudicated by the courts is, whether a clause of revocation, contained in a will or codicil by which the testator devises the subject of the former will, is effectual, if the will or codicil has not been duly executed as such, though the instrument has been executed according to the forms prescribed by the revoking clause of the statute. And that, it will be seen, is a question the same in principle as the one involved in the case we -are now considering.
The doetrine settled by the english cases, is, I think, correctly recognized by the court of delegates in the case of Limberry v. Mason, 2 Com. Rep. 451. where it was held, that if there be an intention to revoke by a new will, and the instrument made for that purpose cannot take effect as a will on account of some defect in the execution, it cannot be a revocation, because it was not intended to revoke the old will until the new one should be complete. In that case, it is true, there was no express clause of revocation, -the revocation being by necessary implication from the conflicting provisions of the two wills; which cannot, it seems to me, be distinguished, in principle, from the case of an express revocation, and there is no distinction made in the .english statute, nor in ours.
The doctrine is directly affirmed in the case of Eggleston v. Speke, where the decision was upon the very point, the second will having been duly executed under the revoking clause., but not under the devising clause of the statute, and containing an express revocation, as appears from the notice of it in 7 Ves. 379. The case of Onions v. Tyrer, 1 P. Wms. 343. was like the one last mentioned in all respects, except that it was made stronger by .the circumstance, that the first will was can- *547 celled by the testator, under the impression that the second Avas made effectual, Avhich cancelling Avas therefore treated as merely' conditional. The decision of lord Cowper was in accordance with the doctrine above stated, though he dwelt upon the circumstance, existing also as he said in the case of Eggleston v. Speke, that the devises in both wills were substantially the same, but expressing the opinion that the effect Avouid be the same, to the exclusion of the heir at law, though the devise in the second Avill had been to a third person.
The same principle was sanctioned by the lord chancellor, lord Alvanley, and sir W. Grant, in Ex parte the earl of Ilchester; they recognized the cases of Eggleston v. Speke and Onions v. Tyrer, as law, and held that the appointment of a guardian by a testamentary paper not duly executed to accomplish such appointment, did not revoke a previous testamentary appointment, though the revocation would have been good as a substantive act; the object being only to make way for another disposition, as was inferred from the nature of the act.
Some of the reasoning of lord Alvanley, and of the remarks of lord Cowper, may be open to criticism, and have been laid hold of by the appellant’s counsel in resisting the principle indicated by their decisions. That the adjudged cases, however, and opinions of the courts, have been understood to establish the above stated doctrine, in its full extent, may be seen by reference to several respectable elementary writers. Rob. on Wills 196-8-9. 200. 1 Wms. on Ex’ors 91. Pow. on Dev. 431-2-3. And observe the distinction deduced by mr. Powell between revoking wills merely, and those which devise and revoke. The cases were luminously reviewed by chief justice Parker in the case of Langton v. Atkins; ho regarded them as settling the principle held by the court in that case, that if the instrument propounded as a revocation, be in form a will, it must *548 be perfect as such, and be subscribed and attested as is recLuire(l hy the statute; and an instrument intended to be a will, but failing of its effect, on account of some imperfection in its structure or for want of due execution, cannot be set up for the purpose of revoking a former will, for this substantial reason, that it cannot be known that the testator intended to revoke his will except for the purpose of substituting the other, and that it would be making the testator die without a will, though it was clearly his design not to do so. I feel no hesitation in admitting a proposition which seems warranted by the cases, that where the revoking clause has not this connection with the disposing part of the will, as where the dispositions relate to other property, without affecting the subjects of the first will, there is no reason why it should not operate as a revocation. 1 Rob. on Wills 200. Pow. on Dev. 433. But this proposition by no means breaks in upon what I consider the correct principle applicable to the present case, but on the contrary, to my mind, tends strongly to illustrate it.
Upon the whole, both upon principle and authority, I am well satisfied that there is no error in the sentence of the general court admitting to probat the will of 1838; and that it ought to be affirmed.
Stanard, J.
I am of opinion, that the statute of 1835 repeals the provision of the 9th section of the statute of wills, in regard to the revocation of wills of personal estate; that revocations of wills of personals must now be executed in the same manner in which wills of personals are required to be made. If I thought otherwise, I should still concur in the opinion of judge Baldwin.
Brooke, J.
There is no necessity to decide the question whether the statute of 1835 repeals the provision of the 9th section of the statute of wills; and therefore I *549 give no opinion on that point, though my impression is that judge /Stanard’s opinion is right. It is enough to say that I concur in the opinion of judge Baldwin.
Cabell, J. I concur in the opinions of both judge tStanard and judge Baldwin.
Sentence affirmed.